## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

STATE OF ILLINOIS,

              Plaintiff

      v.

CSL PLASMA, INC and CSL BEHRING, LLC,

              Defendants.

No. _____

Hon. _____

JURY DEMANDED

## COMPLAINT

The State of Illinois ("State"), by its attorney, Illinois Attorney General Kwame Raoul, brings this action against Defendants CSL Plasma, Inc. and its parent company CSL Behring, LLC, (collectively "CSL Plasma" or "Defendants") under Title III of the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §§ 12182 ("ADA"), and the Illinois Human Rights Act, 775 ILCS 5/5-101 *et seq.* ("Human Rights Act"), to obtain an order enjoining Defendants from refusing to serve individuals with disabilities at their plasma collection centers.

## BACKGROUND

1.      The blood plasma industry is a multi-billion dollar international industry. Plasma "donation" is the process of inviting members of the public to collection centers to extract plasma. To those members of the public who meet eligibility requirements, CSL Plasma provides the service of extracting whole blood from them, then mechanically separating the plasma components, and returning the red blood cells and other undesired blood components to the person. The process typically takes about ninety minutes, after which CSL Plasma pays individuals for providing their plasma.

2.      CSL Plasma allows U.S. residents to provide plasma as often as twice per week at its collection centers.  Many people rely on providing plasma to collection centers as a source of income.  CSL Plasma advertises that its donors receive an average of $70 per "donation" and up to $400 per month.

3.      CSL Plasma refuses to make its collection centers accessible to people with certain disabilities.  It has created unfounded policies, practices, and procedures that prevent people with mental health disabilities who use a service animal or who are deaf from providing plasma and being compensated for their time. When CSL Plasma refuses to serve these individuals, it deprives them of a significant opportunity to earn money.

4.      CSL Plasma's conduct violates both the ADA and the Human Rights Act.  The State respectfully requests relief from this Court to ensure Illinois residents with disabilities have the same opportunity to access collection centers and provide plasma as non-disabled residents.

**PARTIES**

5.      The State of Illinois brings this action on behalf of the People of Illinois by and through Kwame Raoul, Attorney General of the State of Illinois ("Attorney General"), as authorized by his authority under the doctrine of *parens patriae* and pursuant to the Illinois Human Rights Act, 775 ILCS 5/10-104.  The State also brings this action on its own behalf to protect its proprietary interests.

6.      CSL Plasma, Inc. is a Delaware corporation with a registered agent in Chicago, Illinois.

7.      Defendant CSL Behring, LLC is a limited liability company based in King of Prussia, PA with a registered agent in Chicago, Illinois.  CSL Behring, LLC is the parent company of CSL Plasma, Inc.

8.    CSL Plasma provides the services of plasma collection, processing, and distribution to the public and the healthcare market.

9.    CSL Plasma operates fourteen plasma collection centers throughout Illinois.

10.    CSL Plasma is a multi-million dollar corporation.  According to its 2019 annual report, in 2019 alone it invested $842 million in research and development across its businesses. It is the world's fifth largest biotechnology company.  In 2019, CSL Plasma's reported net profit after tax was $1.919 million.

11.    The Attorney General brings this action to defend the State of Illinois's quasi-sovereign interest in the prevention of present and future harm to its residents, including individuals who are, have been, or would be victims of CSL Plasma's discriminatory policies and practices.

12.    CSL Plasma's policies affect a substantial segment of the residents of the State of Illinois, including direct victims as well as other members of the public who suffer the indirect effects of CSL Plasma's discriminatory practices.

13.    The Attorney General enforces the public policy of the State of Illinois to secure for all of its residents the freedom from discrimination against any individual because of his or her disability. 775 ILCS 5/1-102(A).

14.    It is the declared interest of the State of Illinois that all people in Illinois can maintain personal dignity, realize their full productive capacities, and further their interests, rights, and privileges as residents of Illinois. 775 ILCS 5/1-102(E). CSL Plasma's practices substantially affect or threaten the State's public policy and its stated interest in the nondiscriminatory treatment of its residents.

15.     The Attorney General, in his *parens patriae* capacity, is uniquely situated to seek injunctive relief that upholds the rights of Illinois residents with disabilities that CSL Plasma through its discriminatory practices and policies has violated.

16.     In addition to affecting Illinois residents, the refusal to allow people with certain disabilities the opportunity to provide plasma harms the State of Illinois's proprietary interests.

17.     The payments from plasma "donations" are a lifeline to many people living in poverty.

18.     Despite great strides made by disability rights movements and the protections afforded by the ADA and the Human Rights Act, working people with disabilities still have twice the rate of poverty compared to the non-disabled population.

19.     The State, through its Department of Human Services, administers a number of services to low-income people.  Those services include Supplemental Nutrition Assistance Program ("SNAP") benefits and money through the Crisis Assistance Program for people who are homeless or at risk of becoming homeless because of eviction.  In 2017, 42.3% of Illinois households receiving SNAP benefits included individuals with disabilities.

20.     Absent the injunctive relief the State seeks, CSL Plasma will continue to refuse to communicate with and collect plasma from thousands of Illinois residents, and refuse to provide the payments for plasma "donations" they could earn, solely because of their disability.  Without access to supplemental funds provided by plasma collection, many of these people will rely on State-administered benefits described above, contributing to the administration costs of the programs.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the ADA claims arise under the laws of the United States.

22.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the Human Rights Act claims share the same factual bases as the ADA claims such that they form the same case or controversy.

23.     Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial portion of the events complained of herein occurred in the Eastern Division of the Northern District of Illinois. Also, five of the nine plasma collection centers Defendants operate in Illinois are located in the Eastern Division of the Northern District of Illinois.

## FACTUAL ALLEGATIONS

24.     Congress enacted the ADA after finding that people with disabilities as a group were "severely disadvantaged socially, vocationally, economically, and educationally." The ADA strives to "assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals." 42 U.S.C. § 12101(a)(6), (7). Title III of the ADA prohibits discrimination on the basis of disability in "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182. The phrase "public accommodation" is to be construed liberally to afford people with disabilities equal access to the wide variety of establishments available to the non-disabled.

25.     It is also the public policy of the State of Illinois, as reflected in the Human Rights Act, to secure for all individuals freedom from discrimination because of physical or mental

disability and "[t]o promote the public health, welfare and safety by protecting the interest of all people in Illinois in maintaining personal dignity, in realizing their full productive capacities, and in furthering their interests, rights and privileges as citizens of [Illinois]." 775 ILCS 5/1-102(A) & (E).

26.     In November 2018, the Attorney General's Office, Disability Rights Bureau, received a complaint from an Illinois resident that a CSL Plasma location in Rockford, Illinois had refused to allow her to donate plasma.

27.     On November 19, 2018, the resident attempted to have plasma collected at a CSL Plasma facility in Rockford, Illinois.

28.     While the resident was there, the staff learned about her service animal.

29.     When they learned about her service animal, CSL Plasma's employees temporarily stopped her from getting her vital signs taken.

30.     The resident asserted her right to be accompanied by her service animal under disability rights laws.

31.     Eventually, the resident was taken to have her vitals taken, but was told she had a slightly elevated fever.

32.     As a result, the CSL Plasma employees asked her to come back.

33.     On November 20, 2018, the resident returned and again was told that she would not be able to provide plasma.

34.     The reason she was given for why she could not provide plasma was because she used a service animal.

35.     As a result of this complaint, on February 5, 2019 the Office of the Attorney General, pursuant to its mandate under the Human Rights Act, initiated an investigation into CSL

Plasma's treatment of donors and potential donors with disabilities by sending a letter to CSL Plasma requesting information and documents.

36.     CSL Plasma responded on March 8, 2019.

37.     In that March 2019 response, CSL Plasma stated that it believes it is not subject to the non-discrimination statutes and regulations of Title III of the ADA and Article 5 of the Human Rights Act.

38.     CSL Plasma also stated and provided a copy of an internal policy that encourages discrimination against people with service animals. (*See* CSL Plasma Health Assessment, attached as Exhibit A.)

39.     The Office of the Illinois Attorney General asked CSL Plasma to describe its service animal policies.

40.     In response, CSL Plasma described its policy involving individuals with service animals related to mental health as "[p]ersons with service animals who provide support for emotional/mental disorders are permitted only if the person can separate from the animal during the approximate 60-90 minute plasmapheresis process."

41.     On August 1, 2019, the Office of the Illinois Attorney General received a second complaint regarding a CSL Plasma collection center located in Montgomery, Illinois in Kane County.  Attached to the complaint was a sworn statement from an Illinois resident describing his experience.

42.     In that complaint, a deaf prospective plasma donor attempted to make a "donation" on July 28, 2018 at the CSL Plasma's collection center located in Montgomery, Illinois in Kane County.

43.     At the beginning of the application process, he requested an American Sign Language ("ASL") interpreter to help him with the application.

44.     He explained that he cannot lip read.

45.     Also, his level of literacy does not allow him to comprehensively and confidently read the medical information required as part of the plasma donation application.

46.     CSL Plasma refused to provide an ASL interpreter for the resident.

47.     Approximately two weeks later, the resident returned to CSL Plasma's Montgomery location and again requested an ASL interpreter.

48.     A manager at the Montgomery center told the resident that providing an ASL interpreter was against company policy.

49.     On information and belief, CSL Plasma had and continues to have a policy or practice of not providing ASL interpreters for donors who need an ASL interpreter for effective communication.

50.     In a December 21, 2018 letter written by CSL Plasma and a copy of which was provided to the Office of the Illinois Attorney General on August 1, 2019, CSL Plasma told the resident's attorney that while they "acknowledge [he] is hearing impaired" they "are not prepared to provide [him] with an ASL interpreter."

51.     The receipt of a second complaint, coupled with CSL's refusal to respond substantively to the Attorney General's earlier requests for information resulted in the State issuing a subpoena on August 13, 2019, served August 26, 2019, to CSL Plasma.

52.     To date, CSL Plasma has refused to substantively respond to the subpoena.

53.     CSL Plasma continues to invite the public to visit its businesses in Illinois to provide plasma.

54. CSL Plasma's website prominently and repeatedly claims that individuals who provide plasma at their centers will benefit from doing so.

55. For example, on May 29, 2020, the CSL Plasma homepage read: "You can save lives while earning some money!"

56. When website visitors click on "Why Donate?" CSL Plasma describes "donation" benefits:

> Your donation helps those in need to live healthier lives.
>
> Your plasma donation can save and improve lives, plain and simple. Our parent company CSL Behring uses human plasma to produce therapies that are used around the world to treat bleeding disorders . . . . CSL Behring's products are also used in cardiac surgery, organ transplantation, burn treatment and to prevent hemolytic diseases in the newborn, so many people will benefit from your donation.
>
> And donating plasma is good for you, too because you'll be compensated for your time, and leave with the knowledge that you're making a real difference in someone else's life.

57. In 2020, CSL Plasma also began informing the public that providing plasma at their collection centers also would benefit the public because plasma was "needed more than ever – especially for treating patients vulnerable to COVID-19."

58. On information and belief, CSL Plasma continues to have internal policies, practices, and procedures that discriminate against a wide range of people with disabilities such that they refuse to collect their plasma and refuse to compensate people with certain disabilities for plasma collection.

## COUNT I

### Violation of ADA Title III with respect to service animals

59. The People reincorporate and re-allege the allegations in paragraphs 1 through 58.

60.     Title III of the ADA, 42 U.S.C. § 12182(a), *et seq*., pertains to public accommodations and services operated by private entities, and provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

61.     Defendants are "places of public accommodation" under Title III of the ADA and its implementing regulations as they are a private entity whose operations affect commerce and which own, lease, and/or operate places of public accommodations, namely plasma collection centers which provides benefits and services for the public and for places of public accommodation. 42 U.S.C. § 12181(7)(F), 28 C.F.R. § 36.104(6).

62.     CSL Plasma has a written policy or practice of not allowing people with mental health disabilities who use service animals to provide plasma.

63.     CSL Plasma's aforementioned policy violates the ADA because it is based on mere speculation, stereotypes, or generalizations about individuals with mental health disabilities who use service animals and does not provide for individualized assessments. 28 C.F.R. § 36.301(b)

64.     CSL Plasma's service animal policy improperly uses eligibility criteria that screens out or tends to screen out an individual with a disability, or a class of individuals with disabilities, from fully and equally enjoying the goods, services, facilities, privileges, advantages, or accommodations of CSL Plasma. 28 C.F.R. § 36.301(a)

65.     CSL Plasma's service animal policy denies an individual, or class of individuals, on the basis of disability the equal opportunity to participate in or benefit from the goods,

services, facilities, privileges, advantages, or accommodations provided by CSL Plasma to non-disabled individuals. 28 C.F.R. § 36.202(b)

66.     The aforementioned policy treats certain people with disabilities differently than non-disabled people because of their disability and in violation of the ADA.

67.     CSL Plasma's service animal policy discriminates against individuals with mental health disabilities who use service animals in violation of Title III of the ADA and its implementing regulations.

68.     CSL Plasma has repeatedly indicated that it does not believe it must comply with the ADA, and it does not intend to comply with the ADA. Discrimination will continue absent the relief requested below.

**WHEREFORE**, the State requests that this Court enter judgment in its favor as follows:

a) A determination that CSL Plasma's policies for evaluating potential donors with disabilities who use service animals violates the ADA;

b) An order requiring CSL Plasma to develop policies for evaluating people with disabilities who use service animals that conform with the statutory requirements and regulations of the ADA;

c) An order requiring CSL Plasma to develop policies to evaluate potential donors that do not discriminate against people with disabilities;

d) An order requiring CSL Plasma to provide reasonable accommodations and modifications to donors with disabilities upon request;

e) An order requiring CSL Plasma employees to undergo training on the ADA requirements and disability awareness;

f) Attorneys' fees and costs, including litigation expenses; and

11

g) Such other relief as the Court deems just and proper.

## COUNT II

### Violation of ADA Title III with respect to ASL interpreters

69. The People reincorporate and re-allege the allegations in paragraphs 1 through 68.

70. Title III of the ADA, 42 U.S.C. § 12182(a), *et seq*., pertains to public accommodations and services operated by private entities, and provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

71. Defendants are "places of public accommodation" under Title III of the ADA and its implementing regulations as they are a private entity whose operations affect commerce and which own, lease, and/or operate places of public accommodations, namely plasma collection centers which provides benefits and services for the public and for places of public accommodation." 42 U.S.C. § 12181(7)(F), 28 C.F.R. § 36.104(6).

72. The implementing regulations of Title III require that public accommodations "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 42 U.S.C. §12182 (b)(2)(A)(iii), 28 C.F.R. §36.303 (c).

73. Auxiliary aids and services include, among other things, qualified sign language interpreters. 28 C.F.R. §36.303 (b) (1).

74. CSL Plasma has a discriminatory policy or practice of refusing to provide ASL interpreters to deaf donors and potential donors, thereby denying them access to the plasma collection services CSL Plasma provides.

75.     By denying ASL interpreters to deaf donors and potential deaf donors, CSL Plasma denies deaf individuals the full and equal opportunity to participate in and benefit from the goods, services, facilities, privileges, advantages, or accommodations of CSL Plasma.

76.     CSL Plasma's policy of refusing to provide ASL interpreters to deaf donors and potential donors discriminates against individuals with disabilities in violation of Title III of the ADA and its implementing regulations.

77.     CSL Plasma has repeatedly indicated that it does not believe it must comply with the ADA, and it does not intend to comply with the ADA.  Discrimination will continue absent the relief requested below.

**WHEREFORE**, the State requests that this Court enter judgment in their favor as follows:

a)   A determination that CSL Plasma's policies of denying deaf donors ASL interpreters violate the ADA;

b)   An order requiring CSL Plasma to develop policies that allow for effective communication that conform with the statutory requirements and regulations of the ADA;

c)   An order requiring CSL Plasma to provide reasonable accommodations and modifications to donors with disabilities upon request;

d)   An order requiring CSL Plasma employees to undergo training on the ADA requirements and disability awareness;

e)   Attorneys' fees and costs, including litigation expenses; and

f)   Such other relief as the Court deems just and proper.

**COUNT III**

**Violation of the Human Rights Act with respect to service animals**

78.     The State reincorporates and re-alleges the allegations in paragraphs 1 through 77.

79.     Article 5 of the Human Rights Act makes it a civil rights violation to "deny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation" because of disability. 775 ILCS 5/5-102(A).

80.     Defendants are a "place of public accommodation" under Article 5 of the Human Rights Act as they operate service establishments that provide benefits and services for the public, and for other places of public accommodation. 775 ILCS 5/5-101(A)

81.     CSL Plasma has a policy or practice of not allowing people with mental health disabilities who use a service animal to access plasma collection services.

82.     CSL Plasma's aforementioned policy results in the denial and/refusal of the full and equal enjoyment of the facilities, goods, and services that CSL Plasma provides to individuals with mental health disabilities who use a service animal on the basis of disability in violation of the Human Rights Act.

83.     CSL Plasma has repeatedly indicated that it does not believe it must comply with the Human Rights Act, and it does not intend to comply with the Human Rights Act. Discrimination will continue absent the relief requested below.

     **WHEREFORE**, the State requests that this Court enter judgment in their favor as follows:

     a)  A determination that CSL Plasma's policies for evaluating potential donors with disabilities who use service animals violate the Human Rights Act;

14

b) An order requiring CSL Plasma to develop policies for evaluating people with disabilities who use service animals that conform with the statutory requirements and regulations of the Human Rights Act;

c) An order requiring CSL Plasma to develop policies to evaluate potential donors that do not discriminate against people with disabilities;

d) An order requiring CSL Plasma to provide reasonable accommodations and modifications to donors with disabilities upon request;

e) An order requiring CSL Plasma employees to undergo training on the Human Rights Act requirements and disability awareness;

f) Civil penalty of $10,000 in accordance with the Human Rights Act for each denial of service by CSL Plasma;

g) Attorneys' fees and costs, including litigation expenses; and

h) Such other relief as the Court deems just and proper.

## COUNT IV

## Violation of the Human Rights Act with respect to publication of discriminatory policies

84. The State reincorporates and re-alleges the allegations in paragraphs 1 through 83.

85. Article 5 of the Human Rights Act makes it a civil rights violation for public accommodations to "publish, circulate, display or mail any written communication . . . which the operator knows is to the effect that any of the facilities of the place of public accommodation will be denied to any person or that any person is unwelcome, objectionable or unacceptable" because of disability. 775 ILCS 5/5-102(B).

86.     Defendants are a "places of public accommodation" under Article 5 of the Human Rights Act as they operate service establishments, which provide benefits and services for the public and for other places of public accommodation. 775 ILCS 5/5-101(A)

87.     CSL Plasma has published, circulated, displayed, and mailed a written policy knowing it will have the effect of denying services and otherwise communicating that a person with a mental health disability who utilizes a service animal is unwelcome, unacceptable, or otherwise objectionable to CSL plasmas facilities and operations because of their disability in violation of the Human Rights Act. (*See* Ex.A.)

88.     CSL Plasma has repeatedly indicated that it does not believe it must comply with the Human Rights Act, and it does not intend to comply with the Human Rights Act.  Discrimination will continue absent the relief requested below.

        **WHEREFORE**, the State requests that this Court enter judgment in their favor as follows:

    a)  A determination that CSL Plasma's publication, circulation, display or mailing of its policies for evaluating potential donors with disabilities who use service animals violate the Human Rights Act;

    b)  An order requiring CSL Plasma to cease from publishing, circulating, displaying, or mailing these discriminatory policies;

    c)  An order requiring CSL Plasma to develop policies for evaluating people with disabilities who use service animals that conform with the statutory requirements and regulations of the Human Rights Act;

    d)  An order requiring CSL Plasma to develop policies to evaluate potential donors that do not discriminate against people with disabilities;

e) An order requiring CSL Plasma to provide reasonable accommodations and modifications to donors with disabilities upon request;

f) An order requiring CSL Plasma employees to undergo training on the Human Rights Act requirements and disability awareness;

g) Civil penalty of $10,000 in accordance with the Human Rights Act for each publication by CSL Plasma;

h) Attorneys' fees and costs, including litigation expenses; and

i) Such other relief as the Court deems just and proper.

## COUNT V

### Violation of the Human Rights Act with respect to ASL interpreters

89.     The State reincorporates and re-alleges the allegations in paragraphs 1 through 88.

90.     Article 5 of the Human Rights Act makes it a civil rights violation to "deny or refuse to another the full and equal enjoyment of the facilities, goods, and services" of any public place of accommodation" because of disability. 775 ILCS 5/5-102(A).

91.     Defendants are a "places of public accommodation" under Article 5 of the Human Rights Act because they operate service establishments that provide benefits and services for the public and for other places of public accommodation. 775 ILCS 5/5-101(A)

92.     CSL Plasma has a policy or practice of refusing to provide ASL interpreters to deaf donors and potential donors thereby denying them effective communication with staff at CSL Plasma's collection centers.

93.     CSL Plasma's aforementioned policy results in the denial and/or refusal to deaf donors and potential donors of the full and equal enjoyment of the facilities, goods, and services that CSL Plasma provides on the basis of disability in violation of the Human Rights Act.

94.     CSL Plasma has repeatedly indicated that it does not believe it must comply with the Human Rights Act, and it does not intend to comply with the Human Rights Act.  Discrimination will continue absent the relief requested below.

**WHEREFORE**, the State requests that this Court enter judgment in their favor as follows:

a)   A determination that CSL Plasma's policies for evaluating potential donors with disabilities who use ASL interpreters violate the Human Rights Act;

b)   An order requiring CSL Plasma to develop policies for evaluating people with disabilities who use ASL interpreters that conform with the statutory requirements and regulations of the Human Rights Act;

c)   An order requiring CSL Plasma to develop policies to evaluate potential donors that do not discriminate against people with disabilities;

d)   An order requiring CSL Plasma to provide reasonable accommodations and modifications to donors with disabilities upon request;

e)   An order requiring CSL Plasma employees to undergo training on the Human Rights Act requirements and disability awareness;

f)   Civil penalty of $10,000 in accordance with the Human Rights Act for each denial of service by CSL Plasma;

g)   Attorneys' fees and costs, including litigation expenses; and

h)   Such other relief as the Court deems just and proper.

Date: June 17, 2020

Respectfully submitted,

KWAME RAOUL
Attorney General of the State of Illinois

By: /s/ Neil Kelley
Assistant Attorney General

Kathryn Hunt Muse
Judith Levitan
Neil Kelley
Elizabeth Morris
Office of the Illinois Attorney General
100 W. Randolph St.
Chicago, Illinois 60601
(312) 814-3000
nkelley@atg.state.il.us
emorris@atg.state.il.us

*Counsel for the State of Illinois*

19