UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STATE OF ILLINOIS,<br><br>Plaintiff,<br><br>v.<br><br>CSL PLASMA, INC. AND CSL BEHRING, LLC,<br><br>Defendants. | Case No. 20-CV-3535<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff State of Illinois sues Defendants CSL Plasma, Inc. and CSL Behring, LLC, operators of blood plasma collection centers, for discriminating against people with disabilities in violation of Title III of the Americans with Disabilities Act (ADA) and the Illinois Human Rights Act (IHRA). Both statutes prohibit disability-based discrimination in "places of public accommodation," including in any "service establishments." Plaintiff moves now for partial summary judgment on the discrete legal issue of whether Defendants' blood plasma collection centers constitute such "service establishments." [76]; [77]. For the reasons explained below, this Court grants Plaintiff's motion and concludes that Defendants' collection centers qualify as "service establishments," and thus "places of public accommodation" under both Acts.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

1

322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## BACKGROUND

This Court takes the following facts from Plaintiff's statement of facts [80], Defendants' response to Plaintiff's statement of facts [87], Defendant's statement of

2

additional facts [88], and Plaintiff's response to Defendant's statement of additional facts [92].

## I. Parties

Plaintiff State of Illinois is a sovereign state of the United States of America. [80] ¶ 1. Its Attorney General Kwame Raoul brings this suit pursuant to the IHRA. *Id.* Defendant CSL Plasma, Inc. is an international corporation that collects source plasma from donors for use in pharmaceutical products. *Id.* ¶ 2. CSL Plasma is wholly owned by Defendant CSL Behring, LLC. *Id.* ¶3. CSL Plasma provides source plasma collected from donors to its parent CSL Behring, which then manufactures the source plasma into plasma-derived medicinal products. *Id.* ¶ 4. CSL Behring then sells the resulting plasma-derived medicinal products in countries around the world for profit. *Id.* ¶ 7.

## II. Source Plasma Collection

Source plasma is human plasma collected via a process called "apheresis," where a donor gives whole blood, a collector separates the plasma from other blood components, and the remaining blood components transfuse back into the donor. *Id.* ¶ 8. The Food and Drug Administration (FDA) heavily regulates collection of source plasma for use in plasma-derived medicinal products. *Id.* ¶ 9. Source plasma can only be legally obtained through apheresis, and source plasma collection can only legally occur in a properly equipped and regulated facility like CSL Plasma's collection centers. *Id.* ¶¶ 10–11.

CSL Plasma operates more than three hundred donation centers in the United States and around the world. *Id.* ¶ 13. CSL Plasma currently operates fourteen donation centers in Illinois and anticipates opening another three centers in the near future. *Id.* ¶ 14. These donation centers sit within strip malls and other areas of commercial activity. *Id.* ¶ 15. A potential donor can arrive at one of CSL Plasma's donation centers with or without an appointment. *Id.* ¶ 19; [87] ¶ 19. A potential donor need not pay to attempt to donate or to donate their plasma. [80] ¶ 20. A potential donor also need not provide proof of insurance or a special membership. *Id.* ¶ 21. Donors may donate twice in any seven day period as long as one day elapses between their donations. [87] ¶ 29.

Not all members of the public are eligible to donate plasma at CSL Plasma. [88] ¶ 15. CSL Plasma restricts potential donor based on age, weight, medical conditions, and the potential donor's geographic radius to the donation center. *Id.* ¶ 15. Answers to medical history questions and a physical examination determine eligibility to donate. *Id.* ¶ 14.

**III. Compensation**

Donors receive compensation for the time they spend donating plasma; CSL Plasma provides compensation via a debt card it provides. [80] ¶¶ 30, 31. On average, a donor earns $40.00 per donation. *Id.* ¶ 32. CSL Plasma also offers a rewards program through which donors can earn additional money by donating more frequently. *Id.* ¶ 33. From time to time, CSL Plasma also offers special promotions encouraging donors to donate more frequently, which can result in additional

4

compensation. *Id.* ¶ 34. CSL Plasma also offers increased compensation for donors donating twice within a week to drive volume. *Id.* ¶ 36. CSL Plasma offers higher compensation to new donors, who receive $100.00 at the first donation and $125.00 at the second donation. *Id.* ¶ 37. Further, donors can receive additional compensation for donating a certain number of times in a year and for completing feedback surveys. *Id.* ¶ 38. Additionally, a donor may receive additional compensation for referring others who successfully make two donations. *Id.*

**IV. Procedural History**

In June 2020, Plaintiff filed suit against Defendants under Title III of the Americans with Disabilities Act (ADA), and the Illinois Human Rights Act (IHRA), seeking to enjoin Defendants from refusing to serve individuals with disabilities at their collection centers. [1]. The complaint accuses CSL Plasma of preventing individuals with mental health disabilities who use a service animal or who are deaf from providing plasma and being compensated for their time, in violation of the ADA and the IHRA. *Id.* ¶¶ 3, 4.

Plaintiff moves for partial summary judgment on the single issue of whether CSL Plasma collection centers constitute "places of public accommodation" under the ADA and IHRA. [76]. Defendants oppose the motion. [86]. The United States filed a "statement of interest," advocating in favor of Plaintiff's position that the collection centers qualify as "places of public accommodation" under the ADA. [85].

## ANALYSIS

### I. The Statutes

Congress enacted the ADA in 1990 to provide "expansive protections" from discrimination for individuals with disabilities. *A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018); *see PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001). Among its protections, Title III prohibits discrimination against disabled individuals in accessing public accommodations:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The phrase "public accommodation" "is defined in terms of 12 extensive categories" in the statute. *Martin*, 532 U.S. at 676. Relevant here, "public accommodation" includes a "professional office of a health care provider, hospital, or other *service establishment*." 42 U.S.C. § 12181(7)(F) (emphasis added).

Like the ADA, the IHRA "is remedial in nature and is construed liberally to achieve its purpose." *M.U. by & Through Kelly U. v. Team Ill. Hockey Club, Inc.*, --- N.E.3d ----, 2022 IL App (2d) 210568, ¶ 18 (Ill. App. Ct. 2022). The IHRA makes it a "civil rights violation for any person on the basis of unlawful discrimination to . . . deny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." 775 Ill. Comp. Stat. 5/5-102(A). Identical to the ADA, the IHRA defines a "place of public accommodation" to include

a "professional office of a health care provider, hospital, or other service establishment." 775 Ill. Comp. Stat. 5/5-101(A)(6).

## II. Whether CSL Plasma's Collections Center Constitute a "Service Establishment" under the ADA and IHRA

Plaintiff moves for partial summary judgment on the threshold legal question of whether Defendants' plasma collection centers meet the definitions of "service establishments" under the ADA and the IHRA. Plaintiff asks this Court to hold that the collection centers meet those definitions. [77]. Defendants urge the opposite. [86].

### A. The ADA

#### 1. Other Federal Decisions

Although the Seventh Circuit has not yet addressed whether plasma donation centers constitute service establishments under the ADA, three other federal appellate courts have.

Starting with the first in time, the Tenth Circuit in 2016 ruled against Defendants' competitor, Octapharma Plasma, finding that plasma donation centers constitute a "service establishment" under the ADA. *See Levorsen v. Octapharma Plasma, Inc.*, 828 F.3d 1227 (10th Cir. 2016). The Tenth Circuit held that they are "service establishments" for "two exceedingly simple reasons: It's an establishment. And it provides a service." *Id.* at 1229. The Tenth Circuit relied on common dictionary definitions of "establishment" and "service." *Id.* "Establishment," according to a dictionary definition, means a "place of business" or a "public or private institution," and "service" means "conduct or performance that assists or benefits someone or something" or "useful labor that does not produce a tangible commodity." *Id.* at 1231

7

(quoting *Webster's Third New Int'l Dictionary* 778, 2075 (2002)). Thus, according to the Tenth Circuit, a "service establishment" is simply a "place of business or a public or private institution that, by its conduct or performance, assists or benefits someone or something or provides useful labor without producing a tangible good for a customer or client." *Id.* Under that definition, the Tenth Circuit concluded that plasma donation centers like Octapharma "satisfy that definition" because they are places of business that assists or benefits those who wish to provide plasma for medical use, by supplying the trained personnel and equipment necessary to accomplish that goal. *Id.* at 1234.

Two years later, the Fifth Circuit issued an opinion in a case involving CSL Plasma as the defendant that disagreed with the Tenth Circuit's opinion in *Levorson*. *See Silguero v. CSL Plasma, Inc.*, 907 F.3d 323 (5th Cir. 2018). Consulting dictionary definitions of the terms "service" and "establishment," the Fifth Circuit adopted a definition of "service establishment" "materially similar" to the Tenth Circuit's in *Levorson*: "an establishment that performs some act or work for an individual who benefits from the act or work." *Id.* at 329. The Fifth Circuit, however, disagreed that plasma collection centers meet that definition, reasoning that they do not provide a "service" to customers. *Id.* Three textual "clues" guided the court's conclusion: (1) the word "service" implies that these centers confer a benefit on a customer, and no benefit occurs here; (2) the list preceding the catchall term "other service establishment" in the ADA does not include establishments that provide a "service without a benefit" to the customer; and (3) the structure of the ADA indicates that an

8

establishment typically does not pay a customer for a "service" it provides. *Id.* The Fifth Circuit elaborated that a donor "is benefitted only by the payment of money, which is wholly collateral to the act of plasma collection," and thus, the individual performs a service for the establishment, "not the other way around." *Id.*

In 2019, the Third Circuit weighed in on the growing circuit split. *Matheis v. CSL Plasma, Inc.*, 936 F.3d 171 (3d Cir. 2019). The Third Circuit reviewed the decisions from the Tenth and Fifth Circuits and adopted the Tenth Circuit's reasoning and holding. The court noted that "no support exists for the Fifth Circuit's statement that donors do not benefit from the act of donating" because "donors receive money, a clear benefit, to donate plasma." *Id.* at 177 (internal quotation marks omitted). Moreover, the Third Circuit disagreed with the Fifth's Circuit's emphasis on "the direction of monetary compensation," underscoring that "providing services means providing something of economic value to the public; it does not matter whether it is paid for with money or something else of value." *Id.* at 178. The Third Circuit concluded that a plasma donation center is a service establishment under the ADA because it "offers a service to the public, the extracting of plasma for money, with the plasma then used by the center in its business of supplying a vital product to healthcare providers." *Id.*

### 2. ADA Statutory Interpretation

With that backdrop in mind, this Court turns to interpretation of the ADA. Courts interpret a statute by first looking to its plain language. *United States v. Foy*, No. 21-2753, --- F.4th ----, 2022 WL 4725719, at *3 (7th Cir. Oct. 3, 2022); *Reed v.*

9

*Brex, Inc.*, 8 F.4th 569, 579 (7th Cir. 2021). If a statute's plain meaning is unambiguous, the "inquiry ends there," *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020), and the Court enforces "the plain meaning of the language enacted by Congress," *Our Country Home Enters., Inc. v. Comm'r of Internal Revenue*, 855 F.3d 773, 791 (7th Cir. 2017) (quoting *Trs. of Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Leaseway Transp. Corp.*, 76 F.3d 824, 828 (7th Cir. 1996)). Absent contrary definitions within the statutory itself, the Court accords words and phrases their ordinary dictionary meanings. *Schneider Nat'l Leasing, Inc. v. United States*, 11 F.4th 548, 559 (7th Cir. 2021).

The ADA's plain text is unambiguous. The plain meaning of the word "establishment" is "a place of business or residence with its furnishings and staff." *Establishment*, Merriam-Webster Online Dictionary (2022 Merriam Webster, Inc.), https://www.merriam-webster.com/dictionary/establishment (last visited Oct. 11, 2022). And "service" means "a helpful act" or "useful labor that does not produce a tangible commodity." *Service*, Merriam-Webster Online Dictionary (2022 Merriam Webster, Inc.), https://www.merriam-webster.com/dictionary/service (last visited Oct. 11, 2022). Read together, "service establishment" means a place of business or a public or private institution that provides a helpful act or useful labor that does not produce a tangible commodity. Under this definition, this Court agrees with the Tenth and Third Circuits that the plain meaning of the term "service establishment" encompasses CSL Plasma's donation centers. It is undisputed that the donation centers are places of business. It also is undisputed that these donation centers

10

provide a helpful act or useful labor that does not produce a tangible commodity: they help people who wish to donate plasma by providing the necessary equipment and medical specialists. And while the plasma they extract is processed into a component of medicinal products sold by pharmaceutical companies, the donation centers themselves provide no tangible commodity to the donors.

Relying heavily, unsurprisingly, on the Fifth Circuit's opinion, Defendants argue that the donation centers do not provide a "service" because services must be inherently helpful to the individual being served, and in this case, the individual performs a service for the establishment. [86] at 10–11. The Fifth Circuit, too, focused on the notion that "service in service establishment is generally viewed as flowing from the establishment to an individual," while in the context of blood plasma collection, donors are "hooked up to a machine and drained of life-sustaining fluid, subjecting them to discomfort and medical risks." *Silguero*, 907 F.3d at 328 (internal quotation marks omitted). As the Fifth Circuit reasoned, donors receive no obvious benefit which would make the donation center's act a service; rather, "the individual performs a service for the establishment, not the other way around." *Id.* at 329.

The Court disagrees with the Fifth Circuit's line of reasoning for two reasons. First, no support exists for the proposition that donors do not benefit from the act of donating; rather, as the Third Circuit observed, donors "receive money, a clear benefit, to donate plasma." *Matheis*, 936 F.3d at 177. Put another way, this compensation is the reason why the vast majority of donors donate plasma to Defendants' operations. Second, reading a direction-of-compensation requirement

11

into the statute would add an element that does not exist in the ADA's text. This Court is not willing to adopt a reading that is contrary to established canons of statutory interpretation. *See Dean v. United States*, 556 U.S. 568, 572 (2009) (instructing courts to resists reading words or elements into a statute that do not appear on its face); *see also Levorsen*, 828 F.3d at 1232 (observing that a "rule of statutory interpretation counsels against reading such a direction-of-compensation requirement into the statute when one doesn't appear there").

Relatedly, this Court rejects Defendants' reliance on the Fifth Circuit's application of the *ejusdem generis* interpretive canon. *See* [86] at 8–9; *Silguero*, 907 F.3d at 329. In construing the ADA, the Fifth Circuit noted that the term "service establishment" is a catchall phrase and reasoned that the phrase "should be read in light of the preceding list," under the canon of *ejusdem generis* ("of the same kind"). *Silguero*, 907 F.3d at 329. The preceding examples of "public accommodations" in the statute include:

> a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, [or other service establishment].

42 U.S.C.A. § 12181(7)(F). As the argument goes, each of these other examples preceding "service establishment" involves establishments acting in a way that "clearly benefits the individual"; plasma collection, by contrast, "does not provide any detectable benefit for donors." *Silguero*, 907 F.3d at 330; *see* [86] at 8–9.

Again, this reasoning is unpersuasive for several reasons. Initially, courts interpreting federal statutes should apply *ejusdem generis* only when the language

12

at issue is ambiguous. *Thermoflex Waukegan, LLC v. Mitsui Sumitomo Ins. USA, Inc.*, No. 21 C 788, 2022 WL 954603, at *4 (N.D. Ill. Mar. 30, 2022) (citing *Tourdot v. Rockford Health Plans, Inc.*, 439 F.3d 351, 353 (7th Cir. 2006)). Here, the statute is unambiguous, and thus, *ejusdem generis* should not apply. Even if this Court were to find the statute ambiguous and apply *ejusdem generis*, it would not find that *ejusdem generis* compels the interpretation Defendants advocate—that plasma collection centers are unlike the other preceding examples of establishments which confer benefits on the recipients of their services. Plasma collection, as discussed above, confers obvious benefit to donors. Defendants offer, and donors receive, monetary compensation. [80] ¶¶ 30–32. Defendants emphasize the fact that in rare instances some donors decline compensation, *see* [87] ¶ 40, but that fact does not change this Court's conclusion. The collection centers confer a benefit to even these "altruistic" donors by providing the equipment and medical staff necessary to consummate these donors' altruistic acts. *See Levorsen*, 838 F.3d at 1234 (noting that collection centers assist or benefit "those who wish to provide plasma for medical use—whether for altruistic reasons or for pecuniary gain—by supplying the trained personnel and medical equipment necessary to accomplish that goal"). Accordingly, to the extent even applicable, the *ejusdem generis* canon does not favor Defendants' construction.

Defendants also contend that, unlike the other establishments listed in Section 12181(7)(F), the law requires collection centers to be selective as to its donors, and as a result, rejects many donors for a myriad of factors including age, weight, residency, and medical conditions. [86] at 12–13. Defendants argue that this distinction removes

13

them from the category of "service establishments" under the ADA. *Id.* This Court again disagrees. The statute does not contain language precluding a business from being a service establishment where it lawfully bars certain members of the public from using its services. This Court will not read an element into the statute that does not exist in its actual text. *Dean*, 556 U.S. at 572. In any event, as Plaintiff points out, other places of public accommodations in the ADA include establishments such as movie theatres and bars, *see* 42 U.S.C. § 12181(7)(B), (C), which may lawfully exclude younger patrons. The inclusion of these enumerated establishments that lawfully exclude certain members of the public evidences Congress did not intend public accommodations to be places that accommodate every member of the public. *See, e.g.*, *Hetz v. Aurora Med. Ctr. of Manitowoc Cnty.*, No. 06-C-636, 2007 WL 1753428, at *17 (E.D. Wis. June 18, 2007) (noting that the ADA "does not specify the conditions under which the privileges or goods offered by the place must be provided, and . . . specifically includes entities which are accessible to only a limited segment of the public").

For all of the above reasons, the plain language of the ADA supports the conclusion that Defendants' plasma collection centers constitute "service establishments," and thus, public accommodations, under the ADA.

### C. IHRA Statutory Interpretation

The same analysis applies under the IHRA. Like federal statutory interpretation, the "fundamental rule" of Illinois statutory interpretation "is to ascertain and give effect to the legislature's intent" which is best expressed through

14

the "statutory language, given its plain and ordinary meaning." *General Motors Corp. v. Pappas,* 950 N.E.2d 1136, 1146 (Ill. 2011). Where the "meaning of a statute is plain on its face, no resort to other tools of statutory construction is necessary." *Id.* Like its federal counterpart, the IHRA includes as public accommodations "other service establishment[s]." 775 Ill. Comp. Stat. 5/5-101(A)(6). In the absence of any Illinois case involving a similar backdrop, and due "to the similarity in the statutes," a court interpreting the IHRA "may look to federal cases for guidance in construing the Act." *M.U.*, 2022 IL App (2d) 210568, ¶ 36 (relying on federal cases interpreting the ADA to construe the term "public accommodation" under the IHRA and observing that "the General Assembly appears to have patterned the [IHRA] after the ADA, most notably in terms of defining what constitutes a public accommodation"). For the same reasons above, the plain text of the IHRA plainly encompasses Defendants' plasma collection centers, which are places of business that provide a helpful act to those who donate plasma.

Resisting this conclusion, Defendants direct this Court's attention to the 2019 decision by the Illinois Human Rights Commission in *In re Steven Walter*, Charge No. 2016SP1351, 2019 WL 2024405 (Apr. 17, 2019). [86] at 3–6. In *Walter*, the petitioner filed a discrimination charge with the Illinois Department of Human Rights (IDHR), alleging that CSL Plasma as an operator of a place of public accommodation denied him access to the facility on account of his mental disabilities. *Id.* at *1. The IDHR dismissed Petitioner's charge for lack of substantial evidence, and the Commission affirmed for several reasons—including a non-discriminatory reason for excluding

15

Petitioner and no evidence of pretext. *Id.* Relevant here, the Commission held that CSL Plasma "is not a place of public accommodation" under the then-existing version of the IHRA because a plasma collection business was "not specifically enumerated as a place of public accommodation" under the IHRA. *Id.* at *2 (internal quotation marks omitted).

The administrative decision in *Walter*, however, is not binding on this Court. *See Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir. 2021) ("In the absence of Illinois Supreme Court precedent, we must use our best judgment to determine how that court would construe its own law, and we may consider the decisions of the Illinois appellate courts.") (internal quotation marks and citation omitted). Moreover, for reasons unclear from the face of its opinion, the Commission relied on an outdated version of the IHRA in construing the term "public accommodation." The prior version contained a general definition of "place of public accommodation," followed by a list of non-exhaustive examples of places of public accommodation which did not include other "service establishments":

> (A) Place of Public Accommodation. (1) 'Place of public accommodation' means a business, accommodation, refreshment, entertainment, recreation, or transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages or accommodations are extended, offered, sold, or otherwise made available to the public.
>
> (2) By way of example, but not of limitation, 'place of public accommodation' includes facilities of the following types: inns, restaurants, eating houses, hotels, soda fountains, soft drink parlors, taverns, roadhouses, barber shops, department stores, clothing stores, hat stores, shoe stores, bathrooms, restrooms, theatres, skating rinks, public golf courses, public golf driving ranges, concerts, cafes, bicycle rinks, elevators, ice cream parlors or rooms, railroads, omnibuses,

16

> busses, stages, airplanes, street cars, boats, funeral hearses, crematories, cemeteries, and public conveyances on land, water, or air, public swimming pools and other places of public accommodation and amusement.

*Duffy v. Ill. Dep't of Hum. Rts.*, 820 N.E.2d 1186, 1188 (Ill. App. Ct. 2004) (quoting 775 Ill. Comp. Stat. 5/5–101(A) (2000)); *see Walter*, 2019 WL 2024405, at *1.

The Illinois legislature amended Section 5/5-101 of the Act in 2007 to mirror the ADA's categorized list of public accommodations, removing the general definition of "places of public accommodation" and including, among the non-exhaustive examples of public accommodations "a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, *or other service establishment*," like the ADA. S.B. 593, 95th Gen. Assemb. (Ill. 2007) (emphasis added); *compare* 42 U.S.C. § 12181(7). For obvious reasons, this Court declines to follow an administrative opinion relying on an outdated version of the IHRA. That version did not include, as the present version does, "service establishments," as a type of "public accommodation." *Walter* is wholly inapplicable and unpersuasive.

## CONCLUSION

For the reasons explained above, this Court grants Plaintiff's motion for partial summary judgment [76]; [77].

Dated: October 18, 2022

ENTER:

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge